[No. G035195. Fourth Dist., Div. Three. Dec. 26, 2006.]

ROOPINDER SINGH SANGHA, Plaintiff and Appellant, v.
VINCENT LaBARBERA, Defendant and Respondent.

**Counsel**

Day, Day & Brown, Christopher J. Day; Law Office of William Kopeny and William Kopeny for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and Gary M. Lape for Defendant and Respondent.

**Opinion**

**ARONSON, J.**—In an action for legal malpractice, Roopinder Singh Sangha alleged his former criminal defense attorney, Vincent LaBarbera, negligently advised him to plead guilty to felony vandalism (Pen. Code, § 594, subd. (a); all statutory citations are to this code unless noted) in exchange for dismissal of a pending criminal threats charge (§ 422). He later retained new counsel, persuaded the court to set aside his plea, and admitted guilt to a misdemeanor vandalism charge.

The trial court granted LaBarbera's summary judgment motion, citing Sangha's failure to raise a triable issue of material fact on whether he had shown actual innocence and postconviction exoneration, necessary requirements for a legal malpractice action arising from the attorney's allegedly negligent representation in the earlier criminal case. Sangha contends these

requirements apply only to the felony vandalism offense, the crime to which LaBarbera negligently advised Sangha to plead guilty. We conclude Sangha must show actual innocence and postconviction exoneration not only of felony vandalism, but also the lesser included offense of misdemeanor vandalism. Because Sangha failed to make the requisite showing, we affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND[1]

On June 24, 2001, Sangha and his girlfriend, Sasha Aggarwal, argued en route to Aggarwal's Lake Forest apartment. Sangha later drove to Aggarwal's parents' Irvine home to demand a key to the apartment. When she refused to turn over the key, Sangha stated loudly: "I'm going to burn down your house, kill you and your family." Sangha took Aggarwal's cell phone from the trunk of her car and threw it at her, breaking an adjacent bedroom window. During the argument, Sangha damaged Aggarwal's cell phone, dented her car, and took Aggarwal's change purse, containing her apartment key. In her application for a domestic violence restraining order filed a few days later, Aggarwal declared she feared for her life based on Sangha's previous threats and violence.

Sangha disputed some of these facts. He admitted he threatened to burn down the house, but denied threatening to kill Aggarwal or her family. He also claimed Aggarwal did not take his threat seriously and denied denting her car.

In July 2001, Sangha was charged with making a felony criminal threat and misdemeanor violations for vandalism and petty theft. Sangha hired LaBarbera in late July and paid him $7,500 to represent him through the preliminary hearing phase of the proceedings. After several continuances, on March 11, 2002, the prosecutor offered to dismiss the criminal threats charge if Sangha would plead guilty to a vandalism "wobbler." Sangha would be placed on three years' probation with no jail time if he agreed to take anger management classes and participate in a community service program. LaBarbera recommended Sangha accept the plea bargain, explaining that if he successfully completed probation, the conviction would "wobble down" to a misdemeanor, which could then be expunged. Sangha reluctantly agreed

---

[1] The following summary is derived from the facts and supporting evidence cited by the parties in their separate statements presented at the summary judgment motion.

and pleaded guilty to an amended complaint charging him with vandalizing property in excess of $400. He executed a *Tahl* waiver (*In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) and guilty plea form, declaring under penalty of perjury he maliciously destroyed property worth more than $400. The court suspended imposition of sentence and placed Sangha on three years' formal probation. Per the agreement, the prosecutor dismissed the criminal threat and theft charges.

Sangha later claimed he could not renew his license to deal securities because of his felony vandalism conviction. Sangha retained new counsel who, on March 2, 2004, persuaded the trial court to grant Sangha's writ of error *coram nobis* and set aside his guilty plea. The court's order noted that the prosecution stipulated to set aside Sangha's felony vandalism plea and agreed to order the clerk to destroy the plea forms dated March 11, 2002.[2] In its minute order, the court relied on section 17, subdivision (b), to "reduce" Sangha's felony vandalism offense under section 594, subdivision (b)(1), to a misdemeanor "at request of Defense."[3] Sangha then signed a waiver of rights form and pleaded guilty to a misdemeanor vandalism charge (§ 594, subd. (a)), a lesser included offense to felony vandalism, the crime to which Sangha had originally pleaded guilty. Sangha was placed on informal probation for 41 days. In April 2004, the court granted his petition to expunge (§ 1203.4) the misdemeanor conviction.

Ten days after the new plea, on March 12, 2004, Sangha sued LaBarbera for legal malpractice, alleging he was "so negligent in [his] investigation, handling and prosecution of [the] action that plaintiff ended up with a felony conviction, all to [p]laintiff's damage . . . ."[4] The complaint also alleged Sangha "was factually innocent of the felony charges against him, and of the felony charge he was convicted of."

The trial court granted LaBarbera's summary judgment motion, ruling that Sangha failed to show postconviction exoneration, a prerequisite to obtaining relief for legal malpractice. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th

---

[2] We have reviewed the superior court file. The clerk did not destroy Sangha's guilty plea form, which remains part of the record.

[3] Section 17 does not authorize a court to "reduce" a charge from a felony/misdemeanor wobbler to a lesser included misdemeanor. The section provides that a wobbler is deemed a misdemeanor under certain circumstances, e.g., when the court imposes a punishment other than imprisonment or when the court grants probation without imposition of sentence and at the time of granting probation or thereafter declares the offense to be a misdemeanor.

[4] Nothing in the complaint or in the record of the summary judgment motion discloses the nature of plaintiff's damages.

1194, 1198, 1205 [108 Cal.Rptr.2d 471, 25 P.3d 670] (*Coscia*).) The court also concluded Sangha could not establish actual innocence, a necessary element to establish legal malpractice in a criminal case. (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536 [79 Cal.Rptr.2d 672, 966 P.2d 983] (*Wiley*).)

II

STANDARD OF REVIEW

We review a grant of summary judgment de novo. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) The court must grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment has the burden of showing "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant satisfies this requirement, the burden then shifts to the plaintiff to show by admissible evidence that a triable issue of material fact exists. (*Ibid.*) To meet this burden, the plaintiff " ' "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." [Citations.]' " (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35–36 [123 Cal.Rptr.2d 555].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted; see Evid. Code, § 115 [preponderance of evidence standard applies where, as here, no higher burden is specified by law].)

III

DISCUSSION

A. *To Maintain a Legal Malpractice Action Against a Former Attorney in a Criminal Proceeding, Plaintiff Must Demonstrate Actual Innocence and Postconviction Relief*

The elements of a legal malpractice action are: (1) a duty to use such skill, prudence, and diligence as are commonly exercised by other members

of the legal profession; (2) breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], superseded by statute on other grounds.) In *Wiley, supra*, 19 Cal.4th at page 536, the California Supreme Court held that for public policy reasons a plaintiff in a criminal malpractice action also must show actual innocence of the criminal offense.

The court based its decision on several considerations. First, " ' "[P]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime. . . ." ' " (*Wiley, supra*, 19 Cal.4th at p. 537.)

Second, public policy requires a plaintiff to bear sole responsibility for the consequences of his or her criminal acts. Thus, " '[a]ny subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct. [Citation.]' " (*Wiley, supra*, 19 Cal.4th at p. 538.) "Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss." (*Id.* at p. 539.)

Third, the criminal justice system provides postconviction procedural protections for all criminal defendants who suffer violations of their Sixth Amendment right to effective assistance of counsel. (*Wiley, supra*, 19 Cal.4th at p. 542.) "If the defendant has in fact committed a crime, the remedy of a new trial or other relief is sufficient reparation in light of the countervailing public policies . . . ." (*Id.* at p. 543.) Requiring actual innocence also eliminates the risk " ' "of two conflicting resolutions arising out of the same or identical transaction." [Citation.]' " (*Id.* at p. 544.)

In *Coscia, supra*, 25 Cal.4th at page 1201, the Supreme Court relied on these same policy reasons to require a former criminal defendant to obtain postconviction exoneration as a prerequisite to showing actual innocence in a legal malpractice action. The court defined postconviction relief as "a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief . . . ." (*Id.* at p. 1205.) Thus, the requirements of actual innocence and postconviction relief are "distinct, but related" concepts. (*Id.* at

p. 1197.) "Actual innocence" refers to a determination in a civil trial that a plaintiff has demonstrated innocence *in fact* by a preponderance of the evidence. (*Levine v. Kling* (7th Cir. 1997) 123 F.3d 580, 582–583; *Shaw v. State, Dept. of Admin.* (Alaska 1993) 861 P.2d 566, 570, fn. 3 [distinguishing actual innocence from legal innocence, which may occur for reasons unrelated to actual guilt; e.g., a successful motion to suppress evidence of guilt].) In contrast, a plaintiff may satisfy the postconviction exoneration requirement even if the relief obtained is not based on the plaintiff's innocence or his lawyer's incompetence. (*Coscia, supra*, 25 Cal.4th at p. 1205, fn. 4.)[5] For example, a plaintiff who obtains postconviction relief because defense counsel misled or coerced the client into an involuntary guilty plea satisfies the requirement. With these principles in mind, we turn to the merits of Sangha's appeal.

## B. *No Triable Issue of Fact Exists on the Element of Actual Innocence*

The parties disagree on the scope of the actual innocence requirement. Does it apply only to specific offenses that are the subject of a plaintiff's malpractice action? Does this requirement encompass lesser included offenses? Or, more broadly, does it apply to all related offenses that were or might have been charged? (*Wiley, supra*, 19 Cal.4th at p. 547 (conc. opn. of Werdegar, J.).) *Wiley* does not directly address these issues.

In *Wiley*, the plaintiff and former criminal defendant obtained postconviction relief when the trial court granted his habeas corpus petition and vacated the judgment. The district attorney abandoned the prosecution and Wiley sued for malpractice. (*Wiley, supra*, 19 Cal.4th at p. 535.) Here, as in *Wiley*, Sangha obtained new counsel who persuaded the trial court to set aside his criminal conviction for felony vandalism. Here, however, the prosecution did not abandon Sangha's criminal case, but instead filed a misdemeanor vandalism charge in lieu of the felony, to which Sangha pleaded guilty. Sangha's subsequent malpractice complaint focused only on LaBarbera's allegedly negligent representation on the original felony vandalism charge.

Sangha argues he need only show actual innocence of the *felony* vandalism charge. He contends "it is not innocence of any offense that must be pled and proved, but innocence of the crime, for which the attorney's legal malpractice

---

[5] Outright rejection of a postconviction claim based on ineffective assistance of counsel "may preclude a criminal defendant from maintaining a malpractice action against trial counsel . . . ." (*Coscia, supra*, 25 Cal.4th at p. 1205, fn. 4.)

led to the wrongful conviction." Relying on the policy pronouncements of *Wiley* and *Coscia*, and cases from foreign jurisdictions, LaBarbera contends Sangha must show actual innocence of misdemeanor vandalism, a lesser included offense to felony vandalism,[6] and any other transactionally related offenses.

 Our analysis is two-fold: Even assuming Sangha need only show actual innocence on the felony vandalism charge, his separate statement fails to demonstrate a triable issue of fact on this issue. And even if Sangha could surmount this obstacle, we conclude the rationale of *Wiley* and *Coscia* requires a plaintiff in a criminal legal malpractice case to show actual innocence and postconviction exoneration on any guilty finding for a lesser included offense, even though the plaintiff alleges he received negligent representation only on the greater offense. Because Sangha fails to make this showing, he cannot prevail on appeal.

### 1. Sangha's Actual Innocence Showing on Felony Vandalism

LaBarbera had the initial burden of demonstrating Sangha could not establish one or more elements of his malpractice action. On the actual innocence element, LaBarbera's separate statement claimed the following was an undisputed material fact: "The guilty plea [to felony vandalism] that Sangha initialed and specified was true and correct under penalty of perjury [and] further stated in relevant part: 'That on 6/25/01 w/in OC[] I did maliciously destroy property belonging to Sasha Aggarwal in excess of $400.' " Because LaBarbera supported this statement with evidence of Sangha's guilty plea form, the burden shifted to Sangha to raise a triable issue of fact on the actual innocence element.

Sangha's separate statement disputed LaBarbera's assertion by citing his deposition testimony explaining he signed the guilty plea form because "his attorney said he had to, even though it was not accurate." To support his claim that his admission on the plea form was inaccurate, Sangha referred to the investigative police report which listed the property damage as less than

---

[6] Felony vandalism prohibits the malicious destruction of property causing damage of $400 or more. Misdemeanor vandalism shares the same elements except it applies to property damage less than $400. "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Misdemeanor vandalism is therefore a lesser included offense because a person cannot commit felony vandalism without also committing the lesser misdemeanor offense.

$400. These responses failed to establish a triable issue of fact on actual innocence. Sangha's explanation that his lawyer forced him to plead guilty does not address whether the value of the property he admitted destroying exceeded $400. As to the value of the property, the trial court correctly sustained a hearsay objection to the police report and Sangha does not question that ruling on appeal. Because Sangha offered no other evidence to show the property damage was less than $400, the trial court did not err in granting summary judgment, even accepting Sangha's legal interpretation of the actual innocence requirement.

## 2. Sangha Must Show Evidence of Actual Innocence on the Lesser Included Offense of Misdemeanor Vandalism

Applying the policy factors discussed in *Wiley* and *Coscia*, we conclude Sangha must show actual innocence on the misdemeanor vandalism offense, even though Sangha limited his malpractice claim to the representation he received on the felony vandalism charge.

■ Sangha concedes he maliciously destroyed the victim's property, and therefore does not claim actual innocence on the misdemeanor vandalism crime. He merely disputes the extent of the damage, arguing his criminal conduct fell short of the $400 threshold for felony vandalism. He contends a competent attorney would have negotiated a more favorable bargain, similar to the one he ultimately received, thereby avoiding the potential loss of his securities license for pleading guilty to the wrong crime.[7] But as *Wiley* instructs, "The fact that nonnegligent counsel 'could have done better' may warrant postconviction relief, but it does not translate into civil damages . . . ." (*Wiley, supra,* 19 Cal.4th at p. 539.) The court explained that for criminal malpractice "a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence. Any harm suffered is *not* 'only because of' attorney error but principally due to the client's antecedent criminality." (*Id.* at p. 540; see *Coscia, supra,* 25 Cal.4th at p. 1203 ["convicted criminal's own conduct is deemed to be the sole cause of his or her indictment and conviction—either after trial or based on a guilty plea"].) It follows that " 'damages should only be awarded to a person who is truly free from *any* criminal involvement.' " (*Wiley,* at p. 539, italics added.) While Sangha minimizes his misconduct, it is undisputed he is not truly free from any criminal involvement.

---

[7] Although Sangha emphasizes his innocence of the criminal threat charge because Aggarwal did not take his threat seriously, we note in passing the prosecution could have prosecuted him for attempted criminal threat, a strike under the "Three Strikes" law. (*People v. Toledo* (2001) 26 Cal.4th 221, 234 [109 Cal.Rptr.2d 315, 26 P.3d 1051] [attempted criminal threat committed if victim lacks sustained fear he or she reasonably could have entertained under the circumstances]; see also § 667, subd. (c); § 1170.12, subd. (a).) Sangha's acceptance of the felony vandalism plea bargain eliminated this possibility.

A comparison of the criminal acts constituting felony and misdemeanor vandalism demonstrates the necessity of applying the actual innocence requirement to lesser included offenses. Vandalism is an intentional and malicious act damaging or destroying property. Although the classification of the offense turns on the value of the property damaged or destroyed, the mental state and criminal acts for both felony and misdemeanor vandalism are identical. (See Judicial Council of Cal. Crim. Jury Instns. (2006–2007) CALCRIM Nos. 2900, 2901.) The same policy considerations supporting the imposition of an actual innocence requirement for the originally charged offense apply with equal force to a lesser included crime. Sangha's interpretation of *Wiley* would allow him to shift responsibility for his own criminal act and alleviate the consequences of his conduct. It would also violate the statutory maxim, "No one can take advantage of his own wrong" (Civ. Code, § 3517) by allowing him potentially to profit from his own criminal conduct. As *Wiley* observes, "If the defendant has in fact committed a crime, the remedy of a new trial or other relief is sufficient reparation in light of the countervailing public policies and considering the purpose and function of constitutional guaranties." (*Wiley, supra*, 19 Cal.4th at p. 543.)

*Redante v. Yockelson* (2003) 112 Cal.App.4th 1351 [6 Cal.Rptr.3d 10] supports our view the actual innocence requirement applies to lesser included offenses. There, Redante was convicted of numerous sexual crimes with underage girls. After his convictions were affirmed on appeal, Redante sued his appellate lawyer for failing to challenge his convictions based on discrepancies concerning the victim's age. Redante argued he was wrongly convicted of crimes pertaining to minors under the age of 14 because the victim was older. Affirming an order granting summary judgment, the appellate court concluded Redante could not establish actual innocence "[e]ven if the victim were 14 years old, [because] Redante's conviction would have been for a different crime." (*Id.* at p. 1358, fn. 2.)

*Bailey v. Tucker* (1993) 533 Pa. 237 [621 A.2d 108], offers a more extensive analysis than *Redante* and bolsters our view Sangha is not entitled to relief. There, the appellate court reversed Bailey's murder conviction because his trial counsel failed to investigate and pursue an intoxication defense. On retrial, a jury found Bailey guilty of the lesser crime of voluntary manslaughter. In the wake of this more favorable outcome, Bailey sued his original trial counsel. The Pennsylvania Supreme Court held that to prevent "the possibility of a defendant actually profiting from his crime, we require that as an element to a cause of action in trespass against a defense attorney whose dereliction was the sole proximate cause of the defendant's unlawful conviction, *the defendant must prove that he is innocent of the crime or any lesser included offense.* If a person is found guilty of a crime, *and that person*

*is indeed innocent of any degree of that crime,* and it is established that the wrongful conviction was proximately caused by counsel's gross dereliction in his duty to represent the defendant, *only then will the defendant be able to collect monetary damages.* If a person is convicted of a crime because of the inadequacy of counsel's representation, justice is satisfied by the grant of a new trial. However, if an *innocent person* is wrongfully convicted due to the attorney's dereliction, justice requires that he be compensated for the wrong which has occurred." (*Id.*, 621 A.2d at p. 113, some italics added, last italics in original; see also *id.* at p. 115, fn. 2.)

Sangha argues language in *Wiley* and other out-of-state decisions supports his interpretation of the actual innocence requirement. For example, he cites *Wiley*'s disapproval of damages for a plaintiff " 'who actually committed the criminal offense . . .' " (*Wiley, supra,* 19 Cal.4th at p. 539) to support his argument the actual innocence requirement applies only to the charged offense which is the subject of the malpractice claim. But the entire quote also includes the observation that " 'damages should only be awarded to a person who is truly free from *any* criminal involvement.' " (*Ibid.*, italics added.) In any event, the carefully selected snippets from *Wiley* and out-of-state decisions Sangha cites shed little light on the matter because none of them directly confronted the issue. More convincing is the public policy rationale underlying *Wiley*, which persuades us the actual innocence requirement does apply to lesser included offenses.[8] Sangha does not claim he can show actual innocence on the lesser offense of misdemeanor vandalism. Accordingly, the trial court did not err in granting summary judgment.

## C. *Sangha Failed to Show Postconviction Exoneration on the Misdemeanor Vandalism Offense*

The same public policy considerations apply to the requirement plaintiff show postconviction exoneration. LaBarbera shifted the burden to Sangha to show a triable issue of fact on this issue when he introduced evidence Sangha received probation after pleading guilty to misdemeanor vandalism. Postconviction exoneration is a "final disposition" of the underlying case. (*Coscia, supra,* 25 Cal.4th at p. 1205.) Probation, however short, is not a final disposition exonerating the criminal defendant. Here, Sangha failed to introduce any evidence he received postconviction relief on his misdemeanor conviction. This serves as an additional ground supporting the grant of summary judgment.

---

[8] Because the issue has no bearing on our decision, we do not decide whether the actual innocence requirement applies to all transactionally related offenses.

## IV

### CONCLUSION

The judgment is affirmed. Costs are awarded to respondent.

Sills, P. J., and Rylaarsdam, J., concurred.