Filed 11/27/13  In re G.P. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re G.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> G.P., <br><br> Defendant and Appellant. | G047609 <br><br> (Super. Ct. No. DL040846) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed.

Kristin A. Erickson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina,

Kristen Kinnaird Chenelia and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

The court found that minor G.P. committed felony vandalism. (Pen. Code, § 594, subd. (a).)[1] The court declared him a ward under Welfare and Institutions Code section 602 and ordered him to be committed to juvenile hall for 60 days, but stayed the commitment pending his successful completion of probation. On appeal minor contends that the court applied the wrong legal standard in determining he committed felony vandalism and that insufficient evidence showed he caused damage in excess of $400. We affirm.

FACTS

On June 21, 2012, minor used a baseball bat to break the window and door of his bedroom in the apartment rented by his mother (Regina Ramirez) and her husband (Ramon Davalos). Ramirez paid for the parts need to replace the window and door, and Davalos installed them. Their receipts showed they paid at least $166.55 for parts. These receipts did not include any charges for paint, a door handle, door hinges, a door jam, or labor. Davalos spent around 20 minutes installing the door and 20 minutes installing the window. Ramirez spent around 30 minutes cleaning up the broken glass. Ramirez believed the new door and window were not inferior to the original door and window.

---

[1] The court dismissed for insufficient evidence an allegation minor possessed a weapon (a billy club). All further statutory references are to the Penal Code unless otherwise stated.

2

Joseph Poncino, the vice-president of construction for Saywitz Company (which owned and managed the apartment building), saw photos of the damaged door and window. Poncino estimated the cost of repairing them would be approximately $500 to $600, but testified this was a "ballpark" estimate since he had not looked at the damage in person. Poncino — a licensed general contractor with 40 years of construction experience — had repaired doors, paid other people to repair doors, and estimated the cost of door repairs "hundreds of times." At the minor's apartment complex, he had repaired or paid for the repair of broken doors and "plenty of windows," including replacing eight or nine windows in the complex in the last eight years.

The court found minor committed felony vandalism by causing damage exceeding $400. The court concluded that Poncino, as "the expert who replaces doors and windows on a regular basis" at the complex where Ramirez and Davalos rented an apartment, "has the most accurate cost of repair." The court focused on the loss to the *owner* of the property, and noted that the property manager of the property estimated the loss to be between $500 and $600. The court found that Ramirez's receipts did not include all the parts necessary to completely repair the damage.

DISCUSSION

*The Court Applied the Correct Standard for Measuring Damage Under Section 594*

Section 594 defines the crime of vandalism. A person commits vandalism by maliciously defacing, damaging, or destroying someone else's property. (§ 594, subd. (a).) If the "*amount* of defacement, damage, or destruction" is at least $400, vandalism is punishable as a felony or a misdemeanor. (*Id.*, subd. (b), italics added.) Although section 594 uses the term "amount" of damage, the statute does not specify the test or standard for measuring it.

Case law establishes that the "amount" of damage within the meaning of section 594 is the *value* of the damage. In *People v. Farell* (2002) 28 Cal.4th 381, 388, our Supreme Court stated that the statutory use of "the word '*amount*' may be understood to refer to the *value* of an item." (Italics added.) *Farell* specifically observed that "'amount' refers to *value*" for purposes of vandalism under section 594. (*Farell*, at p. 389, italics added; see also *In re Arthur V.* (2008) 166 Cal.App.4th 61, 68 ["The offense of vandalism, like that of theft, can be either a felony or misdemeanor depending on the value of property at issue"]; *Sangha v. La Barbera* (2006) 146 Cal.App.4th 79, 89 [classification of vandalism turns on "value" of property damaged or destroyed].) These cases, however, do not specify how the "value" of the damage is to be measured.

Minor argues the victim's out of pocket loss is the proper measure of damage, relying on the law of victim restitution for support. He asserts the sole "point behind determining the amount of damages" is to make the victim whole.

The Attorney General contends the proper measure of damage is the fair market value of the repair or replacement. She relies on the law of theft for support, pointing out that fair market value is the well-established standard for determining whether theft constitutes grand or petty theft.

The court, by adopting Poncino's estimate of the cost of repair, impliedly applied a fair market value test for the amount of damage under section 594. In reviewing the court's ruling, we interpret section 594 de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

We begin by reviewing the relevant aspects of the law on restitution and grand theft which might prove instructive by analogy. Section 1202.4 governs restitution and generally requires courts to impose a "separate and additional restitution fine" on any convicted criminal defendant (§ 1202.4, subd. (b)) who has caused a victim to suffer economic loss (*id.*, subd. (f)). The amount of restitution must be based "on the amount of loss claimed by the victim . . . *or any other showing to the court*." (*Ibid.*, italics added.)

4

Reimbursable economic losses include full or partial payment for the "value" of damaged property, measured as "the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (*Id.*, subd. (f)(3)(A).) A restitution award need *not* be limited to the *lesser* of the replacement cost or the actual cost of repair; rather, the "statute leaves the choice to the trial court." (*People v. Stanley* (2012) 54 Cal.4th 734, 738.) Minor acknowledges that a court has discretion to order restitution exceeding the actual cost of repair, but suggests we ignore this aspect of restitution law. He argues, "When it comes to assessing damage as an *element* of the crime, as opposed to a restitution award, there is no discretion involved."

As with vandalism, value is an element of theft. Grand theft is a theft of property valued at more than $950 (§ 487, subd. (a)) and is punishable as a felony or a misdemeanor (§ 489). A stolen property's value is its "reasonable and fair market value" (§ 484, subd. (a)), "'not the value of the property to any particular individual'" (*People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438). "'[F]air market value' means the highest price obtainable in the market place rather than the lowest price or the average price." (*People v. Pena* (1977) 68 Cal.App.3d 100, 104.) Fair market value may be established by expert testimony. (*Lizarraga*, at p. 438.) When the evidence is in conflict on the issue of the stolen property's value, the question is one for the fact finder. (*Ibid.*)

Grand theft is analogous to felony vandalism with respect to the issue at hand because value is an element of both crimes and determines whether the perpetrator may be *punished* as a felon. Consequently, the proper measure of section 594 damage is the fair market value or fair market cost of the repair or replacement of the property. Minor's attempt to limit the value of the damage he inflicted in this case to the out of pocket costs of his mother and her husband is unpersuasive. Punishment encompasses goals beyond victim compensation — e.g., deterrence, rehabilitation, retribution, and public protection. Although some of these goals may not apply to the juvenile justice system (*In re A.G.* (2011) 193 Cal.App.4th 791, 805), they are relevant to the

5

interpretation of section 594. Restitution is simply an "additional" form of punishing an offender. (§ 1202.4, subd. (b).) By its terms, section 594 does *not* limit a vandal's punishment to victim compensation: a person who defaces property is subject to the punishment of keeping property free of graffiti for up to one year. (*Id.*, subd. (c).)

Our criminal justice system strives to punish an offender commensurately with the gravity of the crime. (See, e.g., *People v. Perez* (1979) 23 Cal.3d 545, 550-551 [purpose of § 654 is to insure that defendant's punishment will be commensurate with culpability].) Fair market value is an objective standard which is not subject to manipulation by the victim. (See *People v. Simpson* (1938) 26 Cal.App.2d 223, 229 [market value at time and place of larceny, not special value to owner of property stolen, is proper basis for proving property's value].) Minor argues that using the test of the victim's actual repair cost prevents "arbitrariness and uncertainty" and eliminates the need to have expert testimony on the "'reasonable repair cost.'" But the instant case illustrates the arbitrariness and uncertainty that can result when a victim is biased. The court found Ramirez to be an "extremely hostile" witness on the stand during direct examination. At the sentencing hearing, the court chided Ramirez and Davalos for coddling and covering for minor. Ramirez and Davalos factored no labor into their estimate of the cost of repair; they also omitted the cost of some necessary parts. Minor acknowledges that a "victim *unsympathetic* to a minor or defendant could very well maximize the estimated repair cost." Furthermore, the court found the actual victim here was the apartment owner, not the tenants Ramirez and Davalos. As to the need for expert testimony in any particular case, if the actual cost of repair is a reasonable sum, there may be no need for expert opinion on the subject.

Finally, minor argues the vandalism statute should be interpreted in his favor under the policy of lenity. But the "rule of lenity is invoked only when "'two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.'"

6

[Citations.] We do not find reasonable the strained interpretation offered by defendant . . . .'" (*People v. Farell*, *supra*, 28 Cal.4th at pp. 394-395.)

*Substantial Evidence Supports the Court's Finding the Damage Exceeded $400*

Minor argues Poncino's ballpark estimate constitutes insufficient evidence of the cost of repairs. This argument requires us to determine "whether there is substantial evidence to support the conclusion of the trier of fact," "not whether guilt is established beyond a reasonable doubt." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) We review the whole record in the light most favorable to the judge's finding. (*In re Roderick P*. (1972) 7 Cal.3d 801, 809.) To be substantial, evidence must reasonably inspire confidence and be of solid value. (*Ibid.*)

Poncino's testimony provided substantial evidence that the fair market value of the damage was between $500 and $600. Given Poncino's 40 years of experience in the construction industry and his personal experience making or arranging for window and door repairs and replacements at minor's apartment complex, his ballpark figure was no uninformed guess. Poncino was the representative of the property owner, who the court found was the victim in this case. "The testimony of the owner is competent and sufficient." (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 10, p. 33 [in theft cases].) Viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supported the court's finding minor caused damage in excess of $400.

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.