[No. B103823. Second Dist., Div. Six. Jan. 6, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN GREEN, Defendant and Appellant.

**COUNSEL**

Ilan Funke-Bilu for Defendant and Appellant.

Barry T. LaBarbera, District Attorney, and Timothy S. Covello, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

YEGAN, J.—Steven Green appeals from a jury conviction in the municipal court for violation of Penal Code section 148, resisting, delaying, or obstructing a peace officer in the performance of his or her duties.[1] We conclude that the evidence is sufficient to support the judgment and affirm the conviction.

*Facts*

At approximately 11:30 p.m. on August 25, 1994, Grover Beach Police Officer Shelly Brigham received a radio dispatch to check on the welfare of two small boys. Five hours earlier an anonymous party reported that a motorist was hitting two children in the front seat of a vehicle. The motorist was described as a White male with long, red-brown hair, unshaven. He was seen driving a blue vehicle, license plate No. ECP556, and traveling southbound on Highway 101 near Santa Maria. The vehicle was registered to appellant.

Officer Brigham went to appellant's home and knocked several times. No one answered. Officer Brigham had the dispatcher call and ask the occupant to come to the door. Appellant answered the door. He matched the description of the driver who had been seen hitting the children.

Officer Brigham told him why she was there. Appellant said that he had just returned from a camping trip with his sons and that they had not been in Santa Maria. Officer Brigham told him that she needed to check the children and make sure they were all right.

Appellant became defensive and raised his voice. He said that he had lived in the area for 15 years, was a coach for children's sports, a "pillar of the community," and that he would never abuse his children. Officer Brigham advised him that she was only doing what the state mandated.

Appellant then changed his story and said that he disciplined the children while driving southbound on Highway 101. Appellant denied beating his children and claimed that he was a "mandated reporter" of child abuse.

---

[1] All statutory references are to the Penal Code unless otherwise stated. Section 148 provides in pertinent part: "(a) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment."

Officer Brigham replied that he should know that she had a right to come in and check the welfare of the children. She offered to look at the children and not wake them.

Appellant became extremely angry, loud, and abusive. He waived his arms around and was "very intimidating." Officer Brigham was concerned for her own safety and that of the children. She called her supervisor, Sergeant Gary Aston, who arrived 10 minutes later. Officer Brigham told him what had transpired. During the conversation, appellant became "very angry and started yelling at us, saying that we were not coming inside his house without a warrant."

Sergeant Aston called for an additional officer and told appellant to step aside. The sergeant warned him that he could be arrested for delaying and obstructing a police officer. Appellant argued with the officers, told them that they needed a warrant, and then allowed them to enter.

Appellant stomped down the hallway, yelling and screaming that they were disrupting his family. He entered a bedroom, yanked the covers off a child who was asleep, and pulled him towards the doorway. Appellant said, "Son, get up. The police are here because they think I have been beating you. *You know that didn't happen*, but that's what they think. Come on, son, get up. These police don't care that you are sleeping. They want me to drag you out of bed in the middle of the night." (Italics added.)

Officer Brigham testified that appellant "yanked the covers off a child sleeping in bed. He grabbed him by the arm and pulled him out of bed. The child was obviously still asleep, did not catch his footing, and started—Mr. Green started to pull the child towards the open doorway. I stepped in front of him and told him to stop and to let the child sit back down on the bed." Appellant let go of the child and stomped down to the next bedroom yelling and screaming. He awakened his second son in the same fashion.

At trial appellant testified that his two boys acted up on the way home from camping. Appellant said that he "threw [his] arm against" Daniel, age nine, who was sitting next to Ben, age eleven.

Appellant claimed that he was in bed when he received the police call to answer the door. Officer Brigham explained·why she was there. Appellant said that he became defensive and asked if she had a search warrant. Officer Brigham offered to call her sergeant. When Sergeant Aston arrived and said that they had to check on the children, appellant became upset. Sergeant Aston told him to step aside or be arrested.

Appellant said that he let the police in and decided to wake the children. Appellant admitted that he lied about being a mandatory reporter and stated that, as a coach, he had been advised about the necessity of reporting suspected child abuse.

### Appellate Department Opinion

The Appellate Department of the San Luis Obispo Superior Court rejected appellant's claim that the conviction was not supported by the evidence. It ruled that the conviction was not based on the mere refusal to consent to a warrantless search. Appellant's actions "continued after the officers finally gained entry down the hall and included evidence, from which the jury could find that defendant preinstructed and coached the child as to the desired response before the police could question him." The dissent opined that appellant's verbal confrontation with police could not sustain a conviction and that his statements in the bedroom did not delay or obstruct the police in their investigation.

Appellant moved for rehearing on the ground that the words spoken prior to his arrest were insufficient to sustain a conviction. In the alternative, he requested the case be certified for transfer to this court. The superior court denied rehearing and certified the case to us. (See Cal. Rules of Court, rule 63(a).) We ordered transfer to settle an important question of law, i.e., whether intimidating a suspected victim will support a section 148 conviction.

### Sufficiency of Evidence for a Violation of Section 148

In reviewing a challenge to the sufficiency of evidence, the appellate court must determine from the entire record whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. (E.g., *People* v. *Crittenden* (1994) 9 Cal.4th 83, 94 [36 Cal.Rptr.2d 474, 885 P.2d 887].) In making this determination, the reviewing court must consider the evidence in a light most favorable to the judgment. The test is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. (*Ibid.*) We may not reweigh the evidence or evaluate the credibility of witnesses. (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

The officers informed appellant of the method they would use to conduct their examination of the child. The evidence of his interference with that examination supports the judgment on at least two theories. First, the

jury could find appellant guilty based upon his conduct of attempting to remove the child from his bedroom, i.e., away from the officers' presence. Second, the jury could find appellant guilty from his act of rousing the child and attempting to intimidate him into denying the commission of the offense.

Given the information possessed by the police, the officers had a duty to investigate the report of child abuse. (§ 11164 et seq.; *People* v. *Payne* (1977) 65 Cal.App.3d 679, 683 [135 Cal.Rptr. 480].) It is reasonable to infer that in conducting an investigation, the officers may want to speak to the child. The trier of fact could find that appellant tried to take the child away from the officers' presence. This conduct alone could provide a factual basis for the jury to find appellant guilty. (E.g., *People* v. *Gibson* (1987) 195 Cal.App.3d 841, 853 [241 Cal.Rptr. 126] [judgment supported by any factual theory is sufficient on appeal].)

Appellant argues that the police were bound by Officer Brigham's statement that she only wanted to visually inspect the sleeping child. The record, however, indicates that appellant refused the offer. Instead, he "yanked" the child out of bed, and attempted to remove him from the officers' presence. Appellant's conduct in fact impeded the police investigation. The fact that the suspected victim was his son did not give him the right to interfere with the investigation by attempting to remove him from the officers' presence. Such conduct can escalate tensions which may give rise to violence.

We agree that appellant had a First Amendment right to criticize the manner in which the police conducted the investigation and that such criticism standing alone, is not violative of section 148. (*Houston* v. *Hill* (1987) 482 U.S. 451, 461 [96 L.Ed.2d 398, 412, 107 S.Ct. 2502]; *People* v. *Quiroga* (1993) 16 Cal.App.4th 961, 968-969 [20 Cal.Rptr.2d 446].) The First Amendment, however, is not a license to intimidate a suspected victim to deny the commission of an offense. (E.g., *People* v. *Robles* (1996) 48 Cal.App.4th Supp. 1, 5-6 [56 Cal.Rptr.2d 369] [defendant obstructed undercover officer by telling suspect to "Get away from that guy!"]; *People* v. *Roberts* (1982) 131 Cal.App.3d Supp. 1, 4-5 [182 Cal.Rptr. 757] [father yelled obscenities at officer trying to administer field sobriety test]; *In re Joe R.* (1970) 12 Cal.App.3d 80, 83-84 [90 Cal.Rptr. 530] [defendant interrupted officer's interview of suspect by asking hostile questions].) Where, as here, the person's speech goes beyond criticism of the officer and the defendant attempts to intimidate a suspected victim into denying the commission of the offense, a violation of section 148 has occurred. The rationale may be simply stated: Here, the attempt to intimidate the suspected victim impeded the investigation. This is the very evil which the Legislature sought to proscribe by the enactment of section 148.

The judgment is affirmed

Stone (S. J.), P. J., and Gilbert, J., concurred.