Filed 7/31/14  Mitchell v. Hanlon CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES MITCHELL,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>STUART HANLON,<br><br>　　　Defendant and Respondent. | A139479<br><br>(Marin County<br>Super. Ct. No. CIV1203867) |

James Mitchell sued his criminal defense attorney, Stuart Hanlon, for legal malpractice in connection with a criminal proceeding after a jury convicted him of several offenses including murder.  Hanlon demurred based on Mitchell's failure to allege acquittal or exoneration by postconviction relief.  The court sustained the demurrer without leave to amend, and entered a judgment of dismissal.  Mitchell appeals.  Finding no error, we affirm.

## I.  BACKGROUND

### A.  *Allegations of the Complaint*

Mitchell filed a complaint, in propria persona alleging he retained Hanlon to represent him in a criminal case for a retainer of $85,000, in addition to $35,000 to be placed in a trust account to cover expert expenses.  He further alleged, to defend the murder charge, Hanlon raised a provocation defense undermining the primary defense of mistaken identity they discussed prior to trial.  According to the complaint, Hanlon instructed Mitchell to "lie on the witness stand" regarding past incidents of domestic violence between him and the victim as well as about his past drug and alcohol use.

Hanlon also "tricked" Mitchell into "providing false testimony" regarding the volatile relationship between him and the victim as evidence of provocation. Mitchell also maintained Hanlon was not "looking out" for his personal interests in shares of stock in "Cinema 7 Inc. (Mitchell Bros. O'Farrell Theatre)," putting his siblings' financial interests ahead of his. Although the complaint alleged Mitchell was innocent and " 'wrongfully' convicted at a very tragic murder trial," he failed to allege he had sought or obtained any form of postconviction relief overturning his conviction. Mitchell requested damages for the attorney and expert fees he expended as well as punitive damages.

**B.** *Hanlon's Demurrer and Mitchell's Opposition*

Hanlon demurred to the complaint on the ground it failed to state a cause of action because Mitchell did not allege he had been acquitted or exonerated by postconviction relief. Relying on the holdings in *Wiley v. County of San Diego* (1998) 19 Cal.4th 532 (*Wiley*) and *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 (*Coscia*), Hanlon asserted exoneration was a required element of a legal malpractice claim against a criminal attorney. Mitchell filed an opposition to the demurrer, arguing in substance *Wiley* and *Coscia*, in which indigent defendants were represented by appointed counsel, are distinguishable because in his case, he incurred financial loss as a result of the fees he paid to privately retained counsel. In addition, he argued, "The proof of actual innocence is not a UNIVERSAL REQUIREMENT and is indeed un-constitutional contradicting the integrity of the law." (Underscoring omitted.)

**C.** *Ruling on the Demurrer and Judgment*

The trial court sustained Hanlon's demurrer without leave to amend. The court indicated California, like most jurisdictions, requires proof of actual innocence, and because Mitchell remained incarcerated and was not presently seeking postconviction relief, he had not met his burden of showing innocence as required by *Coscia.*

Thereafter, Mitchell filed an appeal from the order sustaining the demurrer before the judgment of dismissal was entered less than a month later. "An order sustaining a demurrer without leave to amend is *not* an appealable order; only a judgment entered on

2

such an order can be appealed." (*I. J. Weinrot & Son, Inc. v. Jackson* (1985) 40 Cal.3d 327, 331, superseded by statute on another issue.) "The existence of an appealable judgment is a jurisdictional prerequisite to an appeal." (*Jennings v. Marralle* (1994) 8 Cal.4th 121 126.) Ordinarily this appeal would be dismissed as being premature, but we have the discretion to deem the order sustaining the demurrer without leave to amend as incorporating the judgment of dismissal. (See, e.g., *Hinman v. Department of Personnel Admin.* (1985) 167 Cal.App.3d 516, 520, superseded by statute on another issue as stated in *County of Monterey v. Mahabir* (1991) 231 Cal.App.3d 1650, 1652–1653 [court has discretion to consider on the merits an appeal from an order sustaining a demurrer without leave to amend].) Here, Mitchell's notice of appeal filed three days after the order sustaining the demurrer issued referred to "the dismissal of the Civil Complaint" regarding his legal malpractice claim against Hanlon. This notice provided Hanlon with sufficient notice Mitchell was appealing from the order sustaining the demurrer without leave to amend. We deem the order sustaining the demurrer as incorporating the subsequently filed judgment of dismissal and decide this appeal on the merits.

## II.  DISCUSSION

### A.  *Standard of Review*

The standard of review governing an appeal from the judgment after the trial court sustains a demurrer without leave to amend is well established. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of

discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Additionally, we note Mitchell is in propria persona, but a party appearing in propria persona "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) " '[T]he in propria persona litigant is held to the same restrictive rules of procedure as an attorney.' " (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125–1126.)

## B. *Mitchell Has Failed to Demonstrate Error*

Mitchell contends the trial court erred in sustaining the demurrer to the complaint. He maintains actual innocence is not a "universal requirement," and in the cases relied upon by Hanlon, to be discussed below, actual innocence was not "a factor in their defenses." Mitchell also reasons he used his own personal funds to pay for the legal services of Hanlon, and therefore the potential for indigent defendants "profitting [*sic*] from their own criminal convictions does not apply to [him]." Finally, Mitchell indicates he has sought postconviction relief in his criminal case, *People v. Mitchell*, case No. A133094, on among other grounds ineffective assistance of counsel. And in fact, this court recently resolved the criminal case in an opinion upholding Mitchell's conviction on all charges. (*People v. Mitchell* (Jul. 28, 2014, A133094) [nonpub. opn.].)[1]

"Factual innocence is an element of a legal malpractice cause of action stemming from representation in a criminal action. 'The failure to provide competent representation in a civil or criminal case may be the basis for civil liability under a theory of professional negligence. In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly posses and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' " (*Wilkinson v. Zelen*

---

[1] We take judicial notice of our opinion in *People v. Mitchell, supra*, A133094.

4

(2008) 167 Cal.App.4th 37, 45 (*Wilkinson*).)  However, as the Supreme Court noted in *Wiley,* when a malpractice action arises from a criminal proceeding, a majority of courts also require proof of actual innocence.  The court therefore declined to permit a criminal malpractice action from proceeding where the plaintiff cannot establish actual innocence. (*Wiley, supra,* 19 Cal.4th at pp. 536, 539.)

"In *Coscia,* the Supreme Court addressed an issue left open in *Wiley*:  'whether a former criminal defendant must obtain exoneration by postconviction relief as a prerequisite to obtaining relief for legal malpractice.' "  (*Wilkinson, supra,* 167 Cal.App.4th at p. 46.)  The court concluded, "a plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel."  (*Coscia, supra,* 25 Cal.4th at p. 1205, fn. omitted.)

Mitchell contends "actual innocence is not a universal requirement," but the cases upon which he relies do not support his position.  (See e.g. *Patterson v. New York* (1977) 432 U.S. 197 (*Patterson*) [no violation of the Fourteenth Amendment's due process clause in requiring defendant to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance as defined by New York law]; *Glenn v. Aiken* (1991) 409 Mass. 699, 703, 569 N.E.2d 783, 786 (*Glenn*) [plaintiff must prove actual innocence, but pleading of actual innocence not required].)  Requiring actual innocence as an element of a malpractice action arising from a criminal complaint was not raised in *Patterson* and was resolved against plaintiff's position in *Glenn*.[2]

Mitchell further attempts to distinguish *Wiley* and *Coscia*, arguing that unlike the indigent defendants in those cases who were represented at no cost to them by court-appointed counsel, he used his own personal funds to pay for privately retained counsel.

---

[2] Mitchell has cited to several other cases and a law review article, none of which are persuasive or applicable.

5

Thus, he claims he is entitled to be compensated for the funds he expended to retain "competent counsel" for his appeal "to get his wrongful Convictions reveresed [*sic*] due to the negligence of [Hanlon] . . . ."

We can discern no rationale and can find no support for carving out an exception for requiring the additional element of actual innocence in a legal malpractice action claim against a former *retained* criminal attorney. As the court explained in *Wiley,* "safeguards built into the criminal law system—including proof beyond a reasonable doubt, the exclusionary rule, and the availability of postconviction relief—distinguish malpractice actions relating to criminal defendants from those involving parties to civil litigation, where a simple 'but-for' test of causation is sufficient." (*Wilkinson, supra,* 167 Cal.App.4th at p. 45.) "In the criminal malpractice context, by contrast, a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence. Any harm suffered is *not* 'only because of' attorney error but principally due to the client's antecedent criminality." (*Wiley, supra,* 19 Cal.4th at p. 540.) "As a result, postconviction relief is often sufficient to afford a criminal defendant what he or she otherwise would have received if competent representation had been provided, including 'dismissal of the charges, a reduced sentence, [or] an advantageous plea bargain. . . . If the defendant has in fact committed a crime, the remedy of a new trial or other relief is sufficient reparation in light of the countervailing public policies and considering the purpose and function of constitutional guaranties.' " (*Wilkinson*, at p. 45.)

Here, although Mitchell has alleged innocence in his complaint, under *Coscia,* he was also required to allege he had obtained exoneration in his underlying criminal case. As discussed in *Coscia*, "public policy considerations require that only an innocent person wrongly convicted be deemed to have suffered a legally compensable harm. Unless a person convicted of a criminal offense is successful in obtaining postconviction relief, the policies reviewed in *Wiley* preclude recovery in a legal malpractice action." (*Coscia, supra,* 25 Cal.4th at p. 1201.) Such is not the case here; Mitchell has not

6

obtained postconviction relief. To the contrary, he was convicted by jury and his conviction as to all counts was recently affirmed by this court.

Separate and apart from Mitchell's failure to establish factual innocence under *Wiley,* the decision in *Coscia* provides an independent bar to his legal malpractice action because he has not obtained exoneration by exercising any other postconviction remedy such as a habeas corpus petition.

For all of the reason discussed, we conclude a "plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case— for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel." (*Coscia, supra,* 25 Cal.4th at p. 1205, fn. omitted.)

As firmly established in *Wiley* and *Coscia*, a plaintiff, regardless of whether he retained private counsel or was represented by court-appointed counsel in a legal malpractice action arising from an attorney's management of a criminal action, may not prevail unless he or she is factually innocent and exonerated of criminal liability. In this matter, Mitchell fails on both prerequisites and the demurrer was properly sustained.

Our holding, however, does not preclude Mitchell from filing a malpractice claim against Hanlon in the future if he is able to plead actual innocence. Effective January 1, 2010, Code of Civil Procedure section 340.6, the statute of limitations covering actions brought against attorneys, was amended to add the following language: "If the plaintiff is required to establish his or her factual innocence for an underlying criminal charge as an element of his or her claim, the action shall be commenced within two years after the plaintiff achieves postconvction exoneration in the form of a final judicial disposition."

7

In other words, if Mitchell is, in fact, exonerated at some point in the future, he may within two years of the date of exoneration file another malpractice lawsuit against Hanlon.

The judgment is affirmed. Hanlon is entitled to his costs on appeal.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.