Filed 9/19/14  P. v. Dominguez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR DOMINGUEZ,<br><br>    Defendant and Appellant. | B246206<br><br>(Los Angeles County<br>Super. Ct. No. BA381624) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis B. Rappe, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Oscar Dominguez of being an accessory after the fact to the commission of a felony, i.e., the murder of Mauricio Jimenez. (Pen. Code, § 32.)[1] The jury found the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(1)(A). The trial court sentenced defendant to the midterm of two years for the violation of section 32 and a consecutive midterm of three years for the gang enhancement.

Defendant appeals on the ground that his conviction must be reversed because there was insufficient evidence to support his conviction for accessory after the fact to murder. We affirm.

## FACTS

Defendant, known as Little Stranger or Criminal, went cruising in the early morning of August 15, 2009, with George Leiva, known as Gordo or Elf, and a man called "Cricket."[2] Cricket was driving a light green Ford Explorer near South Park in the City of Los Angeles and was armed with a gun. Defendant was a member of the 55 Bunch gang, and Leiva was a member of the Hang Out Boys gang. The two gangs are associated, and they are rivals of the Playboys gang.

Near South Park, Jimenez, known as Mynor, and his girlfriend, Monica Arriaga, walked into an alley from 51st Street and headed toward 52nd Street. As Cricket was driving, he saw Jimenez and said he looked like he might be a Playboys gang member. A surveillance camera in the area captured an image of the Explorer pulling over to the curb at 3:50 a.m. Leiva and Cricket got out of the Explorer and confronted Jimenez and Arriaga, at which point Jimenez pushed Arriaga, telling her "to go." As she ran away, she heard gunfire. So did Dominguez, who was waiting in the Explorer. When the

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

[2]     "Cricket" was the moniker for Gilberto Juarez.

gunfire ceased, Arriaga returned to Jimenez, who was lying on the ground, face down. She saw blood underneath him and heard moaning. When she spoke to Jimenez, he did not answer.

Leiva and Cricket returned to the Explorer and got in. Dominguez, who had switched to the driver's seat, drove away and was told by Leiva and Cricket, "I think we got him." The surveillance camera captured an image of the Explorer making a U-turn at 3:51 a.m. Arriaga called the police with her cell phone. At about 3:55 a.m., Officer Joseph Meyers of the Los Angeles Police Department received a radio call directing him to the scene of the shooting. He arrived and found an emotional Arriaga and the victim lying face down on the sidewalk.

Dominguez drove the Ford Explorer away from the crime scene and down 51st Street to "the one-way going close to Fig[ueroa]." It was between "54, 53." Dominguez parked the Explorer, and he, Leiva and Cricket got out of the vehicle and went in different directions.

Police investigators found 14 nine-millimeter expended cartridges at the crime scene. Four days later, Deputy Medical Examiner Jeffrey Gutstadt conducted an autopsy on Jimenez. Gutstadt determined that Jimenez had 26 bullet holes caused by entry and exit wounds but could not determine the number of times Jimenez had been shot. Jimenez had suffered fatal bullet wounds to his right lung, liver, small intestine, and the femoral artery and vein in his right leg. The total loss of blood from the damage caused by these particular gunshot wounds led to Jimenez's death. During the autopsy, Gutstadt saw what he believed to be signs of medical intervention. Gutstadt was not asked to offer an opinion on the time of death, or how long it took Jimenez to die from his wounds. The defense did not cross-examine the medical examiner.

On October 15, 2009, detectives interviewed Dominguez and asked if he knew anything about the killing of Jimenez. Dominguez disclosed what he had seen and heard, that he had been with Leiva and a man nicknamed Cricket, and that he had driven the Explorer away from the scene.

## DISCUSSION

### I. Defendant's Argument

For the first time on appeal, defendant contends the prosecution failed to prove Jimenez died before defendant finished rendering aid to the principals, Elf and Cricket. Therefore, he asserts, the evidence is insufficient that the murder was complete before defendant aided Elf and Cricket escape from the scene. Because section 32 requires proof that defendant helped the principals *after* commission of the specified felony, the contention is that defendant's conviction must be reversed. [3]

### II. Relevant Authority

Section 32 provides that "[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." "'The elements of a charge of murder are an unlawful killing with malice aforethought.'" (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069.)

"'When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citations.] "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]" [Citation.] We ""'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" [Citation.]" [Citation.]' [Citation.]" (*People v. Lopez*, *supra*, 56 Cal.4th at p. 1069.)

---

[3] After the prosecution rested, the defense made no motion under section 1118.1 alleging that the evidence was insufficient to sustain conviction of the charges.

We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Green* (1997) 51 Cal.App.4th 1433, 1437.) "Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it." (*People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765.)

"Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) "Simply put, if the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citations.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 143.) We do not engage in independent fact finding, but instead affirm the jury's determinations if they are supported by any logical inferences grounded in the evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11-14.) "We simply consider whether ""*any* rational trier of fact could have found the essential elements of [the] crime beyond a reasonable doubt.'" [Citations.]' [Citation.]" (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)

## III. Evidence Sufficient

After examination of the entire record, we conclude there was sufficient evidence such that the jury reasonably could have found the elements of accessory to murder were present. That a contrary conclusion might also have been reasonable does not compel reversal of the conviction. (*People v. Kraft*, *supra*, 23 Cal. 4th 978, 1059.)

The jury was instructed that in order to find defendant guilty of a violation of section 32 (being an accessory to a felony), the prosecutor had to prove that the perpetrator committed a felony; that defendant knew that the perpetrator had committed this felony; that after the felony was committed, the defendant aided the perpetrator with the intent to allow the perpetrator to avoid or escape arrest, trial, conviction, or

punishment. The instruction concluded, "To decide whether the perpetrator committed the felony of Murder, please refer to the separate instructions that I will give you on that crime." (CALCRIM No. 440.) The jury received the standard instructions on murder, CALCRIM Nos. 500, 520, and 521, with which defendant has no quarrel.

The jury had the benefit of the following facts: Arriaga testified that she and Jimenez were six to eight feet from the two men at the end of the alley between 51st Street and 52nd Street near Towne Avenue. (Peo. Exh. 29.) After gang challenges were exchanged, Jimenez told her to go. As Arriaga ran away, she heard a lot of shots and was actually hit by a shell. Police found a total of 14 expended shell cartridges at the shooting scene. Arriaga ran back to Jimenez and found him face down on the ground, not talking. There was blood underneath him. He was moaning. The police came "a little bit over 10 minutes after" the shots were fired. The ambulance came after the police arrived. Arriaga saw Jimenez's body being taken away.

The surveillance video shown at trial revealed that at 3:50 a.m. the SUV pulled up to the curb on northbound Avalon Boulevard just before 52nd Street on the east side. The SUV paused and then made a U-turn and continued south on Avalon out of the camera's view at 3:51 a.m..

When Elf and Cricket got out of the car with a gun to accost Jimenez, defendant moved to the driver's seat of the car and waited. Elf and Cricket got back in the car, and one of them said, "I think we got him." According to the medical examiner, Jimenez had 26 holes in his body between entry and exit wounds. The bullets took many paths within the body and affected vital internal organs, leading to death. The fatal wounds were to the right lung, the diaphragm, the liver, small intestine, and the right femoral artery and vein. The loss of blood from all of the damage to these organs led to death.

In attempting to evade guilt as an accessory after the fact to murder, defendant clings to the absence of expert testimony that the victim did not survive longer than the time it took defendant to drive the shooters from the scene and abandon their vehicle. We believe the evidence at trial was sufficient to show that Jimenez was mortally wounded by the numerous gunshots to his body, suffered rapid blood loss, and died

6

before Dominguez had driven the Explorer from 51st Street and Avalon Boulevard to 54th Street almost to Figueroa Street.

It is true that *People v. Esquivel* (1994) 28 Cal.App.4th 1386 (*Esquivel*), cited by defendant, stated that "murder ends with the death of the victim." (*Id*. at 1397.) The *Esquivel* court sought to contrast that crime with robbery, which "continues with the asportation of the loot," in a case tried on the sole theory of felony murder. (*Id*. at pp. 1392, 1397.) The prosecutor's theory was that Esquivel was an aider and abettor of a robbery committed by the person or persons who killed the victim, and thus guilty of felony murder, even if the victim was killed before he joined in the intent to rob the murder victim. (*Id*. at p. 1394.) Esquivel contended on appeal, and the reviewing court agreed, that the trial court erred in failing to instruct the jury sua sponte regarding the time that Esquivel formed the intent to participate in the robbery, i.e., whether it was before or after the murder was committed, in order to determine his guilt based on a theory of felony murder. (*Id*. at pp. 1392, 1399.)

*Esquivel*'s brief reference to the time a murder is completed in the midst of its lengthy analysis of the theories of aiding and abetting and felony murder does not aid in the analysis of this case because the issue in *Esquivel* centered on the failure to instruct the jury on the necessity of determining when the defendant formed the requisite intent for felony murder. In *Esquivel*, the time of death was not important—it was deemed a given that the murder had ceased before the robbery began or while it was ongoing. (*Esquivel*, *supra*, 28 Cal.App.4th at p. 1394.) In that case, the prosecutor gave the jury the wrong information, stating that even if Esquivel did not join the plan to rob until after the murder, as long as the actual killer planned to rob before the murder, Esquivel was guilty of felony murder. (*Ibid.* ) As the court stated, "'[c]onflicting or inadequate instructions on intent are closely related to instructions that completely remove the issue of intent from the jury's consideration, and, as such, they constitute federal constitutional error. [Citation.]'" (*Id.* at p. 1399.) In the instant case, there was no incorrect legal theory presented to the jury, and defendant's complaint is merely one of a factual deficit in the expert's evidence that was supplied, we believe, by sufficient circumstantial

7

evidence capable of being evaluated by a jury. In *Esquivel* as well, the sequence of events was muddled, with several different versions of events in the victim's house on the fatal day being told by Esquivel. In the instant case, the sequence of events could not be clearer: Leiva shot Jimenez full of holes and caused five fatal wounds, after which defendant helped him escape.

Defendant also cites *People v. Celis* (2006) 141 Cal.App.4th 466 (*Celis*) for the proposition that the People were required to prove that the acts defendant committed to aid the principals were committed after Jimenez died. In *Celis*, the defendant complained that the trial court failed to instruct the jury sua sponte that "'a murder is complete when the fatal blow is struck, even if the victim lingers for a substantial period of time.'" (*Celis*, *supra*, 141 Cal.App.4th at p. 471.) The defendant wanted such an instruction because she theorized she had been erroneously convicted of murdering the victim on an aiding and abetting theory by cleaning the floor at the crime scene—an act she performed *after* her son had allegedly delivered the fatal blow to the victim and taken the victim away, *but before* the victim died.[4] (*Ibid*.) The *Celis* court found no error resulted from the absence of the suggested instruction and stated that "the victim's death is a sine qua non of murder," and the crime could not have been 'completed' until [the victim] had died." (*Ibid*.) Defendant goes on to cite several out-of-state cases cited by the *Celis* court. (*Id*. at pp. 471-472.)

We believe *Celis* also fails to aid the analysis in this case. As in *Esquivel*, the issue in *Celis* was the trial court's alleged failure to give a sua sponte instruction that would have aided the defendant's case. In *Celis*, the proposed instruction was incorrect in that a murder is clearly not complete until the victim dies, and *Celis* cited a great deal of case law in order to demonstrate that simple proposition. *Celis*, however, was a case where the facts, as in *Esquivel*, were not straightforward due to the several different versions of events given by the principals in the murder. (*Celis*, *supra*, 141 Cal.App.4th

---

[4] The jury found not true the allegation that the defendant had personally used a deadly or dangerous weapon. (*Celis*, *supra*, 141 Cal.App.4th at p. 470.)

at pp. 469-470.)  At different times, both the defendant and her son admitted to hitting the victim in the defendant's kitchen, and, depending on which version was believed, one or both of them put the victim's body in the trunk of a car.  (*Id.* at pp. 469-470.)  A concrete block found near the body at a dump site was consistent with an injury to the victim's face, which the medical examiner deemed antemortem.  Thus, there was conflicting evidence as to whether the defendant or her son, who later pleaded guilty to the murder, actually killed the victim, leaving what the defendant perceived as an opening to avoid responsibility as an aider and abettor.

Here, there was only one version of the facts, and the facts were simple.  The perpetrator and manner of killing were not in doubt.  There was sufficient circumstantial evidence for the jury to find that the victim died a few minutes after being shot and before the Explorer was dumped several blocks away, and it is evidence from which a jury could arrive at this conclusion without the benefit of expert testimony.  The fact that an almost immediate death would ensue from receiving a volley of gunshots in the upper body is not a subject "sufficiently beyond common experience" that the opinion of an expert was necessary.  (Evid. Code, § 801, subd. (a).)  Viewing the evidence in the instant case in the light most favorable to the prosecution, a reasonable trier of fact could have determined that Jimenez was dead before defendant stopped aiding the perpetrators.  We therefore reject defendant's contention that there is insufficient evidence he was an accessory after the fact of murder.

**DISPOSITION**

The judgment is affirmed.


                                                                        BOREN, P.J.

I concur.

        FERNS, J.*

_____

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

9

ASHMANN-GERST, J.—Dissenting.

I respectfully dissent.

Only if Mauricio Jimenez (Jimenez) died before Oscar Dominguez (Dominguez) stopped assisting the escape of George Leiva (Leiva) and a man nicknamed Cricket was Dominguez guilty of being an accessory after the fact to the murder of Jimenez. This was not proven.

It is well settled that "[e]xpert testimony is required where the facts from which the conclusions are to be drawn are peculiarly within [an] expert's knowledge and are not a matter of common knowledge." (*People v. Chapman* (1962) 207 Cal.App.2d 557, 578.) In my view, the window of time it took for Jimenez to die from his gunshot wounds is peculiarly within the knowledge of medical experts. Here, there was no expert testimony regarding how long it took Jimenez to die, or how long it would take a man of his height, weight and age to die from the wounds that he suffered. Also, there was no testimony establishing how much time transpired between the shooting and the moment Dominguez parked the vehicle and stopped assisting the escape of Leiva and Cricket. Whether Jimenez died within that window of time was left entirely to the imagination and guesswork of the jurors.

The majority sees the evidence differently. It suggests that the evidence was susceptible to two reasonable interpretations—that Jimenez died before Dominguez stopped aiding the escape, or that Jimenez died after—and that under the substantial evidence test, we must therefore affirm. (*People v. Farnam* (2002) 28 Cal.4th 107, 143.) This is so, the majority avers, because the circumstantial evidence supports the inference that Jimenez "died a few minutes after being shot and before the Explorer was dumped several blocks away." (Maj. Opn., at p. 9.) But there is no evidence that it took Dominguez "a few minutes" to drive "several blocks" in the dead of night rather than a minute or less. (Maj. Opn., at p. 9.) Also, I disagree with the majority's conclusion that

the time it took Jimenez to die "is not a subject 'sufficiently beyond common experience' that the opinion of an expert was necessary." (Maj. Opn., at p. 9.)

Based on the evidence, the jury could not find beyond a reasonable doubt that Dominguez was an accessory after the fact to Jimenez's murder. I therefore conclude that Dominguez's conviction violated his right to due process. (*People v. Davis* (2013) 57 Cal.4th 353, 360 [inferences cannot be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture or guesswork]; *People v. Aranda* (2012) 55 Cal.4th 342, 356 ["Under the due process clauses of the Fifth and Fourteenth Amendments, the prosecution must prove a defendant's guilt of a criminal offense beyond a reasonable doubt"].)

I would reverse.


_____, J.
ASHMANN-GERST

2